**[Cite as *435 Elm Invest., L.L.C. v. CBD Invests. Ltd. Partnership I*, 2020-Ohio-943.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| 435 ELM INVESTMENT, LLC,[1] | : | APPEAL NO. C-190133 |
|  |  | TRIAL NO. A-1603148 |
| Plaintiff-Appellee, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
| CBD INVESTMENTS LIMITED PARTNERSHIP I, | : |  |
|  | : |  |
| and | : |  |
| RONALD J. GOLDSCHMIDT, | : |  |
| Defendants-Appellants, | : |  |
| and | : |  |
| RSJJ INVESTMENTS LIMITED, | : |  |
|  | : |  |
| CBD INVESTMENTS, INC., | : |  |
|  | : |  |
| CITY OF CINCINNATI, | : |  |
| and | : |  |
| ROBERT A. GOERING | : |  |
| Defendants. | : |  |

---

[1] 435 Elm Investment, LLC, substituted as party plaintiff for U.S. Bank National Association on September 20, 2017.

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  March 13, 2020

*Frost Brown Todd LLC, Ryan Goellner* and *Vincent E. Mauer*, for Plaintiff-Appellee,

*Statman Harris & Eyrich LLC* and *William B. Fecher*, for Defendants-Appellants.

**BERGERON, Judge.**

{¶1}    In this latest chapter of a meandering quest to execute on a judgment, the plaintiff here zeroed in on various entities allegedly owned by the judgment debtors.  One potential weapon in a creditor's arsenal in such situations is a "charging order" under R.C. 1705.19(A), which enables creditors of a member of a limited liability company ("LLC") to obtain a judicial order charging the membership interest of the member with payment of the unsatisfied amount of the judgment.  The plaintiff here sought, and secured, such an order, but there were two problems.  First, several of the entities were not LLCs at all, placing them beyond the purview of the statute at hand.  And second, for the actual LLCs involved, the plaintiff failed to tender requisite evidence that our precedent requires to substantiate the judgment debtors' membership interests in the LLCs.  For these reasons, we must reverse the judgment below.

I.

{¶2}    We start with the Cliff Notes version of the facts of this sprawling real estate dispute, highlighting only the matters germane to this appeal.  Defendant-appellant Ronald Goldschmidt and an accompanying chorus of entities intertwined with him sit at the center of this appeal.  More than two decades ago, the city of Cincinnati leased both CBD Investments Limited Partnership I ("CBD LP") and RSJJ Investments Limited ("RSJJ") portions of its real property, referred to as the "Convention Place Mall," located in downtown Cincinnati, for development purposes.  In turn, CBD LP granted U.S. Bank National Association ("U.S. Bank") certain rights arising from its lease with the city in exchange for a mortgage loan.  Subsequently, further securing the loan, CBD Investments, Inc., ("CBD Investments") as the general partner of CBD LP, and Mr. Goldschmidt, as the

president of CBD Investments, executed and signed guaranties with U.S. Bank, placing them on the hook as well.

{¶3} Years later, in 2016, U.S. Bank initiated suit against Mr. Goldschmidt and various entities involved with him, seeking a money judgment against him and CBD LP, as well as a foreclosure of its leasehold mortgage and security interest granted by CBD LP. Because the suit implicated the city's lease with CBD LP, the city eventually sought termination of the leases between RSJJ and CBD LP, thus joining the litigation. To make a long, procedurally-convoluted story short, eventually, in September 2017, the city obtained a declaratory judgment (in hand with a writ of forcible entry and detainer) terminating CBD LP's and RSJJ's leaseholder interests in the property, and therefore subjecting CBD LP to certain rights held by U.S. Bank. CBD LP and RSJJ appealed, among other things, the court's grant of partial summary judgment and a writ of forcible entry and detainer, but we affirmed. *See U.S. Bank Natl. Assn. v. City of Cincinnati*, 2019-Ohio-1866, 136 N.E.3d 794 (1st Dist.).

{¶4} As the litigation meandered along, in July 2017, U.S. Bank transferred all of its rights and interests to plaintiff-appellee 435 Elm Investment, LLC, ("Elm Investment"). Roughly contemporaneously with the time that RSJJ and CBD LP filed their appeal against the city, Elm Investment substituted in for U.S. Bank as the party plaintiff. And in September 2018, while awaiting this court's decision regarding CBD LP's appeal, Elm Investment filed its own motion for partial summary judgment, seeking a monetary judgment against Mr. Goldschmidt and CBD Investments in the amount of their unpaid debt. Based upon the loan guaranty contracts Mr. Goldschmidt and CBD Investments executed back in 1999 and the evidence tendered by Elm Investment, the trial court granted

4

the motion and entered judgment against the defendants in the amount of $1,553,253.26, plus interest.

{¶5} Eager to recover the unpaid judgment, Elm Investment moved for a charging order pursuant to R.C. 1705.19 in an effort to prevent Mr. Goldschmidt and CBD Investments from evading execution. The two-page motion requested that the court order (1) CBD Investments, (2) RSJJ, (3) Tri Star Commercial Group, Inc., ("Tri Star"), (4) CBD LP, (5) Elm Street Deli ("Elm Street"), and (6) Bauer Farm Kitchen ("Bauer Farm") to directly pay any obligation owed to Mr. Goldschmidt or CBD Investments to Elm Investment. Notably, Elm Investment never attached any supporting evidence to its motion. In response, CBD Investments and Mr. Goldschmidt maintained that the court could not charge these six entities pursuant to R.C. 1705.19 because Elm Investment offered no evidence that any of the entities were LLCs, as required by the statute, nor did it comply with other aspects of the statute (such as requiring payments to be limited to membership interests).

{¶6} Upon considering the competing arguments, the trial court, without holding a hearing, sided with Elm Investment and granted the motion for a charging order, anchoring its order to what Elm requested in the motion (i.e., relief based on R.C. 1705.19). The court accordingly ordered that the six entities identified above "shall not transfer any cash or other item of value to either Mr. Ronald J. Goldschmidt or CBD Investments, Inc." and that they must cough up "any cash or other assets that would otherwise be transferred to a Judgment Debtor or for the benefit of a Judgment Debtor."

{¶7} CBD LP and Mr. Goldschmidt now appeal the trial court's judgment, raising three assignments of error. In their first two assignments of error, CBD LP and Mr. Goldschmidt challenge different aspects of the court's decision to grant Elm Investment's

motion for a charging order—both the order's sweeping in non-LLCs as violative of the statute (first assignment) and the fact that the order went beyond the acceptable bounds of a charging order (second). In their third assignment of error, they assert that the court erred when it failed to convene a hearing prior to granting the motion. We ultimately find the first assignment dispositive and accordingly turn our attention there.

II.

{¶8} In the first assignment of error, the appellants challenge the trial court's issuance of a charging order pursuant to R.C. 1705.19, asserting that because this statute only applies to LLCs, the order oversteps its bounds by encompassing non-LLCs. We review questions of statutory interpretation like this de novo. *See Vontz v. Miller*, 2016-Ohio-8477, 111 N.E.3d 452, ¶ 26 (1st Dist.) ("[W]e review de novo issues of law upon which the trial court based its decision, such as the sufficiency of the evidence to support a judgment and the interpretation of * * * statutory provisions.").

{¶9} R.C. 1705.19 is nestled into R.C. Chapter 1705, entitled "Limited Liability Companies." Pursuant to R.C. 1705.19(A), "any judgment creditor *of a member of a limited liability company* [may apply] to a court of common pleas to charge *the membership interest of the member* with payment of the unsatisfied amount of the judgment with interest[.]" (Emphasis added.) Based on this language, an order pursuant to this statute not only requires that the entity involved be an LLC, but also necessitates that the debtor be a member of that LLC. *See Stanfield v. On Target Consulting, LLC*, 2017-Ohio-8830, 90 N.E.3d 962, ¶ 12 (1st Dist.) (reversing court's order granting appellees' motion for a charging order because the appellees failed to prove appellant was a member of the relevant LLCs); *FirstMerit Bank, N.A. v. Xyran Ltd.*, 8th Dist. Cuyahoga No. 102905, 2016-Ohio-699, ¶ 25 ("R.C. 1705.19 governs charging orders against members of limited liability

companies."). For purposes of R.C. 1705.19(A), a "member" is "a person whose name appears on the records of the limited liability company as the owner of a membership interest in that company." R.C. 1705.01(G). In turn, R.C. 1705.01(H) defines "membership interest" as "a member's share of the profits or losses of a limited liability company and the right to receive distributions from that company."

{¶10} As noted above, the charging order here encompassed "(1) CBD Investments, Inc., (2) RSJJ Investments Limited, (3) Tri Star Commercial Group, Inc., (4) CBD Investments Limited Partnership I, (5) Elm Street Deli, and (6) Bauer Farm Kitchen[.]" Based on the names alone, at least three of the entities are not LLCs—two categorized as corporations and one as a limited partnership (points Elm Investment does not quibble with now). As to the other three entities, Elm Investment never established in its two-page motion that RSJJ, Elm Street, or Bauer Farm hold LLC status. Nor does it include or attach evidence that either Mr. Goldschmidt or CBD Investments is a member of any of these entities. In its motion before the trial court, Elm Investment merely offers vague assurances of these points, barren of any record citation: "[p]leading and testimony in this case demonstrate that Goldschmidt owns all or part of [the six entities]." On appeal, Elm Investment likewise fails to substantiate these contentions with any record citations.

{¶11} Belatedly appreciating the statutory limits on a court's authority under R.C. 1705.19, Elm Investment insists that the trial court's order did not actually charge membership interests in the six entities pursuant to the statute, but instead accomplished the same result via its inherent equitable powers. Elm Investment provides scant support for some free-wheeling equitable authority to issue charging orders over non-LLCs, but we need not decide that matter today. Instead, we find its argument unpersuasive because it defies what occurred in the record. Elm Investment's motion requested relief only in

accordance with R.C. 1705.19: "Plaintiff is entitled to an order under Ohio Revised Code Section 1705.19 providing that any of the above-listed entities should not transfer any cash to any Judgment Debtor[.]" We see no inkling of an equity argument in its motion, and certainly no citations to equitable principles or cases. Nor does the trial court invoke equity in its order granting relief. Against that backdrop, we are unwilling to speculate that the trial court sub silentio exercised equitable powers that no party requested it to summon, and it certainly possessed no statutory authority under R.C. 1705.19 to issue a charging order to non-LLC entities.

{¶12} During oral arguments, Elm Investment adjusted its argument, maintaining that the court relied upon R.C. 1705.19 to charge membership interests in three of the entities (that it contends actually were LLCs), and only utilized its inherent equitable powers with respect to the remaining three. That again demands a gloss on the trial court's order that finds no support in its plain language. Nevertheless, we did consider Elm Investment's argument that the order, if defective for the non-LLCs, could be salvaged in part based on the existence of three actual LLCs.[2]

{¶13} In response to our queries at oral arguments, Elm Investment properly directed us towards portions of the record where, indeed, the defendants admitted below that RSJJ, Elm Street, and Bauer Farm are all LLCs. We will accept an admission by an adverse party as dispensing with the need to offer proof on this point. *See Uebel v. Edgewood City School Dist. Bd. of Edn.*, 12th Dist. Butler No. CA2003-10-257, 2004-Ohio-2487, ¶ 13 (resolving that appellant need not prove the fact that she was older because "the [defendant-appellee], in its answer to appellant's second amended complaint, admitted that 'the [defendant] has hired a male treasurer who is younger than [appellant].' "). But even

---

[2] A legitimate question arises as to whether Elm Investment waived its equitable argument by not presenting it below or waived this modified version of it, but we need not tackle that matter today in light of our disposition of the merits.

so, this only gets Elm Investment halfway across the goal line, as it fails to draw our attention to evidence within the record that establishes Mr. Goldschmidt and CBD Investments are actually members of any of these three LLCs.

{¶14} Although R.C. 1705.01(G) sheds little light on what "the records of the limited liability company" means, we discussed this point at length in *Stanfield*, 2017-Ohio-8830, 90 N.E.3d 962, detailing the necessary proof that a party must offer to prove membership interest in a LLC for purposes of securing a charging order. In *Stanfield*, this court considered which documents a party could marshal to establish membership, turning to other statutory provisions governing LLCs, including R.C. 1705.28(A), for guidance. *Id.* at ¶ 9. R.C. 1705.28(A) requires that an LLC retain certain records in its principal office, including copies of the articles of organization, the operating agreement, tax returns, financial statements, and a current list of the members. As we explained, these documents provide reliable information about an LLC's "corporate governance" that assist in answering questions of membership. *Id.* at ¶ 10. Accordingly, this court held that "when determining if an individual is a member of a limited-liability company for the purpose of R.C. 1705.19, the trial court must consider records maintained by the company for the purpose of its corporate governance that name those owners entitled to receive distributions and share in the profits and losses of the company." *Id.*

{¶15} Appellants challenged issues regarding any "membership interest" by CBD Investments or Mr. Goldschmidt both below and on appeal—yet Elm Investment never responded with any documents (i.e., articles, operating agreements, lists of the members) maintained by any three of the LLCs for "purpose of its corporate governance" that confirm membership status of the judgment debtors. Elm Investment had adequate opportunity to steer us in the right direction by providing appropriate citations on this point in its brief if

they existed but failed to do so.[3] *See Barnett v. Combs*, 2d Dist. Montgomery No. 24134, 2011-Ohio-5947, ¶ 29 (holding that because the appellate court did not have transcripts, the court could not "speculate what the testimony was at trial," but "only review the exhibits presented by the parties during the bench trial"). And, based on our review, nowhere in the pleadings or charging order motion did we observe any documents of the caliber described in *Stanfield* that would validate Mr. Goldschmidt's or CBD Investments's membership interests. Therefore, because Elm Investment never confirmed via proof or admission that Mr. Goldschmidt and/or CBD Investments are members who "share in the profits and losses" of, and "receive distributions" from, RSJJ, Bauer Farm, or Elm Street, the court erred in granting the charging order pursuant to R.C. 1705.19 with respect to those entities.

### III.

{¶16} For all of the foregoing reasons, we sustain Mr. Goldschmidt and CBD LP's first assignment of error, reverse the court's order granting Elm Investment's motion for a charging order, and remand the cause to the trial court for further proceedings consistent with this opinion. Based on our disposition that the court should have denied the motion, we find that the remaining two assignments of error are moot. *See* App.R. 12(A)(1)(c).

Judgment reversed and cause remanded.

**CROUSE, J.,** concurs.

**ZAYAS, P. J.,** concurs in part and dissents in part.

**ZAYAS, P. J.,** concurring in part and dissenting in part.

---

[3] Contrary to the dissent's argument, it is incumbent upon the proponent of the motion (here Elm Investment) to establish entitlement to relief. Given that we recently clarified the types of evidence required, Elm Investment should have known what it needed to substantiate its claim for relief. We see no need to engage in speculation about what certain transcripts might or might not show, given that Elm Investment has never specifically argued that requisite proof of membership interests was adduced at any hearing. The dissent also contends that we are sua sponte granting Mr. Goldschmidt relief, but he opposed the motion, filed a notice of appeal, and briefed the matter.

{¶17} I concur with the majority that the trial court erred in granting a charging order pursuant to R.C. 1705.19 for entities that were not limited liability companies—namely, CBD Investments (a corporation), Tri Star Commercial Group (a corporation), and CBD LP (a limited partnership). R.C. 1705.19 clearly only provides judgment creditors with the ability to recoup debt through a *limited liability company*—via the membership interest of a member of the limited liability company. However, I must respectfully dissent from the majority's conclusion for the remaining entities that were limited liability companies—RSJJ Investments Limited, Elm Street Deli, and Bauer Farm Kitchen.

{¶18} It was not the *appellees'* responsibility to demonstrate the error of which *appellants* complain. *See Farmers Prod. Credit Assn. of Ashland v. Stoll*, 37 Ohio App.3d 76, 523 N.E.2d 899 (9th Dist.1987) (the *appellant* must demonstrate the error of which he complains); App.R. 9(B). By requiring a show of proof of membership interest from the *appellees*—something that was allegedly admitted by the appellants in the proceedings below—the majority upends the presumption of regularity, rewards the appellants for their self-serving omission of the transcripts of the proceedings, and permits noncompliance with the appellate rules regarding notice of transmission of the record.

{¶19} In this case, the trial court determined that granting appellees' charging order was "[b]ased on the evidence and testimony in this matter." The appellants contend, in part, that the trial court's reliance on the evidence and testimony was erroneous. Ordinarily, appellate review of errors concerning facts, testimony, and evidentiary matters must be demonstrated from a record that is transmitted to this court. That was not done in this case. The appellants never transmitted any transcripts, including those containing the testimony on which the trial court apparently relied. Thus, we must presume regularity and the validity of the trial court's judgment for the assignments of error relating to evidentiary

matters. For the remaining assignments of error, our review is limited to errors of law or other defects on the face of the trial court's decision.

{¶20} Under this limited standard of review, I would reverse and remand this cause by sustaining the appellants' first assignment of error, in part, as explained above, and by sustaining the second assignment of error, holding that the trial court exceeded its authority in ordering pursuant to R.C. 1705.19 that "any cash or other assets that would otherwise be transferred" to the judgment debtor should instead be paid to judgment creditor. This is an error on the face of the decision. R.C. 1705.19 limits judgment creditors to the rights of an assignee of the *membership interest*—it does not permit a broad charging order encompassing "any cash or other assets" that are not tied to a member's membership interest.

### No Transcripts Limits Appellate Review

{¶21} "It is well-established that the duty to provide a transcript for appellate review falls upon the appellant." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980); *see* App.R. 9. Without a transcript of the proceedings or its alternatives, we must "presume regularity and the validity of judgment of the trial court." (Internal citation omitted.) *Ostrander v. Parker-Fallis Insulation*, 29 Ohio St.2d 72, 74, 278 N.E.2d 363 (1972); *see In re I.W.,* 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515. Allegations raised in an appellate brief are not sufficient to overcome the presumption of regularity in a trial court's proceedings and the judgment entered by the court. *Zashin, Rich, Sutula & Monastra Co., L.P.A. v. Offenburg*, 90 Ohio App.3d 436, 629 N.E.2d 1057 (8th Dist.1993).

{¶22} Here, the record certified to this court contains the original papers and copies of the journal entries. But, missing from the record are transcripts of the proceedings below. The appellants indicated on the docket statement filed with the clerk that partial transcripts would be provided—by checking the box that says "There will be a partial

transcript of proceedings filed"—but ultimately never indicated which parts were going to be transcribed, did not provide notice of which parts to appellees, and never provided transcripts at all. Under the appellate rules, if the appellants had provided partial transcripts, then the burden to provide any other part of the transcripts would have shifted to the appellees. However, because the appellants did not provide *any* transcripts, the duty to provide even partial transcripts never shifted to the appellees—it remained the appellants' responsibility. *See* App.R. 9(B). Appellants also never filed an App.R. 9(B) statement to indicate that a transcript is not needed in order to consider this appeal. Thus, in the absence of an adequate record, our standard of review is limited to errors of law or other facial defects in the decision of the trial court.

## First Assignment of Error

{¶23} Appellants' first assignment of error alleges that "the trial court erred in issuing a charging order which encompassed non-limited liability companies." Within this assignment is the argument that "no evidence was presented that CBD Investments was a member of any of the named entities," and thus the trial court erred in precluding transfers to CBD Investments.

{¶24} I agree with the majority that R.C. 1705.19(A) is specific to limited liability companies and requires that a debtor be a member of a limited liability company. I also agree with the majority that the charging order listed entities that were not limited liability companies. It is readily ascertainable from the pleadings that CBD Investments, Tri Star

Commercial Group, and CBD LP were not limited liability companies.[4]  That part of the charging order should indeed be reversed.

{¶25}  I disagree with the majority for the remaining entities that were admitted to be limited liability companies in the pleadings and response motions filed by the appellants. As explained by the majority, an admission needs no proof.  The majority begrudgingly accepts that the admissions suffice to demonstrate that the entities were limited liability companies, but strangely refuses to apply the same reasoning to the appellants' secondary argument regarding the membership interests in the limited liability companies.  This inconsistency is the basis of my disagreement.

{¶26}  The record of this case for appellate review is only made up of the journal entries filed below—again, there are no transcripts.  In those entries, appellees and the city of Cincinnati alleged in motions and pleadings that Goldschmidt admitted in a September 19, 2018 contempt hearing to an ownership interest in at least Elm Street Deli and Bauer Farm Kitchen, which were tenants of the disputed real estate.  And, regarding RSJJ Investments Limited, Goldschmidt admitted to having a membership interest in the company in two separate sworn entries.[5]  The admissions regarding Elm Street Deli and

---

[4] Elm Investment filed their initial complaint on May 31, 2016, alleging in paragraph 2 that "CBD Investments Limited Partnership I ("CBD LP") is an Ohio limited partnership," and in paragraph 3 that "CBD Investments, Inc. ("CBD Inc.") is an Ohio corporation." Ronald Goldschmidt and CBD Investments filed an answer to this complaint on July 29, 2016, admitting to the allegations.
Cincinnati filed an amended complaint on December 29, 2017, alleging in paragraph 3 that Tri Star Commercial Group, Inc., is a limited liability company.  Tri Star, along with Goldschmidt and CBD Investments, answered the complaint on February 8, 2018, correcting Tri Star's status to "a corporation."

[5] Cincinnati filed a cross-claim against CBD Investments Limited Partnership I and a third-party complaint against RSJJ Investments Limited and Joseph Reis on August 31, 2016, alleging in paragraph 6 that "RSJJ is either directly or directly (sic) owned and controlled by Goldschmidt."  Ronald Goldschmidt and CBD Investments filed an answer to this cross-claim/third-party complaint on October 4, 2016, admitting to the allegation.
Cincinnati moved for partial summary judgment against CBD Investments and RSJJ Investments on November 8, 2016.  CBD Investments and RSJJ Investments responded in opposition on November 21, 2016, including an affidavit of Ronald Goldschmidt.  Paragraph 1 of this affidavit of Goldschmidt states: "I am the principal of both CBD Investments Limited Partnership I ("CBD") and RSJJ Investments Limited ("RSJJ")."

Bauer Farm Kitchen formed the basis of the city's motion to amend its complaint to include the entities, which was granted. The admissions regarding RSJJ Investments Limited, Elm Street Deli and Bauer Farm Kitchen formed the basis of the appellees' motion for the charging order now before us. As stated above, the trial court based its charging order "on the evidence and testimony in this matter." A trial court can take judicial notice of the record before it. *See* Evid.R. 201; *Helfrich v. Madison*, 5th Dist. Licking No. 11 CA 26, 2012-Ohio-551. The trial court did not need to cite specific parts of the record to support its own charging order.

{¶27} While the majority contends that presuming the trial court heard what it said it heard amounts to speculating on the testimony below, I submit that it does not. On the contrary, the majority's assertion—that the trial court erred in basing its charging order on the testimony presented—does amount to speculating on the testimony below, as it relies on an assumption that the trial court *did not* hear what it said it heard. For support, the majority cites *Barnett v. Combs*, 2nd Dist. Montgomery No. 24134, 2011-Ohio-5947, ¶ 29— for the proposition that we should not speculate what the testimony was at trial—but neglects the remainder of the paragraph which states that the duty to provide transcripts rests with the appellant and that without transcripts, the appellate court is "constrained to presume the regularity of the proceedings below unless the limited record for our review affirmatively demonstrates error."

{¶28} With an admission, there was no need for Elm Investments to submit proof of the membership interests in the manner described in *Stanfield v. On Target Consulting, LLC*, 2017-Ohio-8830, 90 N.E.3d 962 (1st Dist.). In *Stanfield*, documents in the record, which *was* transmitted to the appellate court for review, plainly established that the judgment debtor did not have a membership interest in the LLCs subject to the charging order. *See* ¶ 12. Conversely, this court did not receive a complete record to review. Without

15

a complete record—i.e., one with transcripts, in this case—to definitively confirm or reject the allegation that membership interests were admitted, we must presume regularity in the trial court and the validity of the trial court's judgment. *See In re I.W.*, 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515, ¶ 8. We cannot say, as the majority does, that the trial court erroneously relied on an admission as the basis for its charging order when we cannot review the record.

{¶29} Finally, the appellants did not appeal the charging order with respect to Goldschmidt. On appeal, they only alleged that the charging order was improper as to CBD Investments: "no evidence was presented that *CBD Investments* was a member of any of the named entities." (Emphasis added.) Therefore, the majority's sua sponte reversal of the charging order with respect to Goldschmidt is improper. *See McMaster v. Akron Health Dept., Hous. Div.*, 189 Ohio App.3d 222, 2010-Ohio-3851, 937 N.E.2d 1094 (9th Dist.) (an appellate court will not sua sponte undertake a plain-error analysis if a defendant fails to do so).

{¶30} Therefore, I would overrule the appellants' first assignment of error with respect to the three limited liability companies.

## Second Assignment of Error

{¶31} Appellants' second assignment of error alleges that the trial court erred in issuing a charging order that directed all cash payable to a judgment debtor should instead be paid to the judgment creditor. The appellants claim that the trial court exceeded the remedy available to a judgment creditor as set forth in the statute. I would agree.

{¶32} Under R.C. 1705.19(B), "[a]n order charging the membership interest of a member of a limited liability company is the sole and exclusive remedy that a judgment creditor may seek to satisfy a judgment against the membership interest of a member or a member's assignee." The statute makes clear that a judgment creditor is entitled to

16

"distributions of cash and other property and the allocations of profits, losses, income, gains, deductions, credits, or similar items" pertaining to a member's financial interest. R.C. 1705.18(A); *FirstMerit Bank, N.A. v. Xyran, Ltd.*, 8th Dist. Cuyahoga No. 98740, 2013-Ohio-1039, ¶ 5, 9. The scope of a charging order may not exceed the statutory boundaries. *Knollman-Wade Holdings, LLC v. Platinum Ridge Properties, LLC*, 10th Dist. Franklin No. 14AP-595, 2015-Ohio-1619, ¶ 16.

{¶33} The charging order in this case provides that:

The Charged Parties shall transfer to Plaintiff's counsel for credit against Plaintiff's judgment in this matter any cash or other assets that would otherwise be transferred to a Judgment Debtor or for the benefit of a Judgment Debtor.

Nothing within the order limits the scope to the membership interests of Goldschmidt or CBD Investments. Accordingly, the charging order is impermissibly broad.

{¶34} Therefore, I would sustain the appellants' second assignment of error, and reverse and remand this cause with instructions for the trial court to charge only the membership interest of the appellants for payment of the unsatisfied judgment.

Please note:

The court has recorded its own entry this date.